CLAUDIO CAPÓ, demandante y apelante, *v.* JORGE ROMANÍ, demandado y apelado.

No. 5828.—*Sometido:* Enero 27, 1933. *Resuelto:* Diciembre 1, 1933.

*Pellón & Ayuso*, abogados del apelante; *J. Valldejuli*, abogado del apelado.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

La corte de distrito, después de un juicio sobre los méritos, declaró sin lugar una acción reivindicatoria y dictó sentencia a favor del demandado como contrademandante. El demandante apela y sostiene que la corte de distrito cometió error: al decretar que la escritura de compraventa de 27 de diciembre de 1925, de Charles B. Colmore a Claudio Capó y Capó, no transmitió derecho real alguno porque no hubo tradición material alguna; al declarar que Romaní era dueño de la finca después de computar las segregaciones de la finca principal; al declarar que para ejercitar la acción era necesario probar el pleno dominio, o sea, la propiedad y la posesión; al declarar que Romaní tenía justo título para la prescripción; al computar el término prescriptivo a partir de la fecha de la adquisición de la finca por un causante común al demandante y demandado; al declarar un derecho a favor de una parte que no compareció en el pleito; al declarar sin lugar la excepción previa de falta de parte contrademandante; al declarar sin lugar la demanda y con lugar la contrademanda; al ordenar la cancelación en el registro de la propiedad de la inscripción a favor del demandante; y al imponerle las costas a éste.

La argumentación asume que los predecesores del demandante tenían la posesión implícita de la faja de terreno en controversia.

La mayor parte las contenciones del apelante

depende, ya para su existencia o ya para su supuesto efecto perjudicial, de la certeza de esta asunción. Prácticamente la única base que de los autos aparece para tal asunción es el hecho de que la escritura de enajenación a que se hace referencia en el primer señalamiento fué inscrita en el registro de la propiedad. Es un hecho incontrovertido ,que ninguno de los causantes del demandante, retrotrayéndose hasta· el causante común, se hallaba a la fecha en que se otorgó cualquiera de las escrituras que aparecen en la cadena de títulos del demandante o en cualquier época posterior, en la posesión material de la faja de terreno en controversia. Si ninguno de estos vendedores era al tiempo de la enajenación dueño de dicha faja, su escritura no podía conferir título alguno al comprador. La inscripción de la escritura de Colmore no otorgó a Capó un título mejor del que Colmore poseía. De tener el demandante derecho a recobrar la finca, deberá hacerlo fundándose en su propio título. A menos que Colmore fuera dueño de la finca en controversia y de que se demostrara mediante evidencia aducida durante el juicio que era tal dueño, es innecesario discutir cualquier error que pudiera haber cometido la corte de distrito sobre las consecuencias provenientes de haberse dejado de dar posesión material, así como la mayoría de los otros errores señalados por el apelante.

En 1906 Courtenay Camplejohn Nairn y Perpal era dueño de tres cuerdas de terreno, resto de once cuerdas adquiridas anteriormente y en parte vendidas por él. De esta parcela de tres cuerdas él segregó y vendió en julio 12, 1906, a Charles M. Boerman, 1,337.05 metros, lindantes al norte y en una extensión de 27.50 metros con la zona marítima; por el sur, en una extensión de 28 metros, con otro solar del mismo vendedor; por el este, y en una extensión de 44 metros, con terrenos de Elías Allende, antes Sucn. Allende, y por el oeste y en una extensión de 55.50 metros, con otro solar del mismo vendedor que tiene una cabida de 26.50 metros por el norte y 27 metros por el sur, hacia el este desde la avenida Nairn,

que tiene 40 pies de ancho de lado a lado. Boerman entró en posesión y procedió a señalar los linderos del solar sembrando palmas de coco por las líneas previamente marcadas con estacas. Romaní derivaba su título de Boerman. La posesión material establecida por Boerman nunca ha sido interrumpida. El terreno en controversia es una faja de 189.47 metros cuadrados que se extendía a través de la parte sur del solar ocupado por Romaní y sus predecesores. Sus linderos por tres lados, este, oeste, y sur, están marcados por las palmeras sembradas por Boerman.

En noviembre de 1906 Nairn vendió a John D. Leavitt 7,150 metros que se describen como lindantes al norte con el mar y la zona marítima y en una extensión de 28 metros con el solar de Boerman; por el oeste con la avenida Nairn y por el este con terrenos pertenecientes a Elías Allende, hoy su sucesión, y en una extensión de 55 metros con el mismo terreno de Boerman. El lindero sur lo era la calle Washington. Se estipuló que se practicaría una nueva mensura y la inscripción siguiente en el registro de la propiedad indica que la nueva mensura produjo un exceso de 212.60 metros cuadrados. Más tarde Leavitt vendió esta propiedad a William M. Aitkin. Aitkin le vendió a Oscar M. Sewell. Sewell le vendió a George Dana Graves, y Graves a Charles B. Colmore.

Colmore segregó y vendió un número de solares. Uno de éstos vendido a Capó en marzo de 1919, se describía como de 795.77 metros, en la avenida Nairn, lindante al norte con una casa perteneciente a doña Catalina Vda. de Cuyar, y en una extensión de 27.19 metros con una faja de terreno de la cual la viuda de Boerman estaba en posesión, y al este, en una extensión de 5.29 metros, por la misma faja, y en una extensión de 8.12 metros con un solar perteneciente a la viuda de Hord, antes sucesión de Elías Allende, y por el sur con el resto de la parcela de que el solar así vendido fué segregado. Más específicamente, la escritura hace constar que al norte y este del solar vendido a Capó se halla una

faja de terreno de 189.47 metros cuadrados que ocupa la viuda de Boerman pero que es reclamada por Colmore, lindante al norte, en una extensión de 28 metros, con el solar de Boerman, al este, en una extensión de 8.31 metros con el solar de Hord, al sur, en una extensión de 28 metros, y al oeste, en una de 5.29 metros, con el solar de Capó. En diciembre de 1925 Colmore también vendió a Capó los 189.47 metros. Capó inscribió su escritura e inició este procedimiento para recobrar los 189.47 metros.

La transcripción taquigráfica de los procedimientos en la corte de distrito contiene la siguiente aseveración del letrado del demandante: que el caso había comenzado en época anterior y que se había presentado alguna prueba documental; que se había radicado una estipulación; que el demandante había presentado un plano y cuatro certificaciones y que este plano y estas certificaciones habían sido ya marcadas *exhibits* A, B, C, D y E. Luego en los autos se explica la imposibilidad de transcribir el *exhibit* A, el plano, y se dice que el original será elevado. No tenemos el plano ante nos y no parece haberse dictado ninguna orden para que el mismo sea elevado. Ni siquiera se hace mención de él en el alegato del apelante.

El *exhibit* B es una planilla de contribuciones para el año fiscal 1922–23, según la cual un administrador judicial, como representante de la sucesión Boerman, declaró el solar de Boerman como de 1,614.82 metros cuadrados. El administrador judicial declaró durante el juicio que poco después de su nombramiento un tasador se presentó con la planilla que el testigo había firmado; que éste en aquella época no sabía el área del solar; y que la única cuestión discutida por él con el tasador fué la cuantía de la tasación. Los *exhibits* C y D son dos planillas para el año fiscal 1923–24. En una de ellas Romaní declara tener una participación indivisa de 2/5 partes en 1,337.05 metros cuadrados. En la otra, que está sin firmar, las 3/5 partes restantes de dicha área figuran a nombre de Boerman. El área dada en los *exhibits* C y D es

el área especificada en la escritura. El *exhibit* E no figura en la transcripción.

En la escritura otorgada a Boerman aparece que Nairn había segregado previamente parte de las 11⅓ cuerdas y vendido 3⅔ cuerdas al Presbyterian Board of Home Missions, y cuatro cuerdas a la Women's Home Missionary Society of the Methodist Episcopal Church. El registro de la propiedad denota otras segregaciones, como sigue: octubre, 1906, a Benjamín S. Haywood, un solar de 75 pies de frente por 145 pies, más o menos, de fondo; diciembre, 1906, 7,150 metros cuadrados a John D. Leavitt; abril, 1910, a Haywood, un solar de 30 pies de ancho por 75 pies de fondo; junio, 1910 a Frank F. Harrington 182 pies por el norte, 178 pies 8 pulgadas por el sur, 85 pies por el este y 85 pies por el oeste; julio, 1910, a Frank J. Brizzie, 178 pies 8 pulgadas por el norte, 176 pies por el sur, 75 pies por el este y 75 pies por el oeste; y en septiembre, 1917, una faja de 25 pies de ancho por 413 pies a Edward Mayers. Los autos no revelan cuándo fueron trazadas la calle Washington y la avenida Nairn. Se mencionan por primera vez en la escritura otorgada a Leavitt. No se desprende si fueron establecidos definitivamente como mojones, o si en aquella época existían meramente sobre el papel. El área de la parcela vendida a Leavitt era incierta en la fecha en que se hizo la enajenación. La escritura otorgada por Leavitt a Aitkin contiene la aserción de que una mensura había revelado la existencia de 212 metros 60 centímetros más que el estimado en proyecto especificado en la escritura otorgada por Nairn a Leavitt. Esto, sin más, no es prueba muy satisfactoria de ese hecho, caso de que lo sea. La escritura de Graves a Colmore trata de enajenar solamente 7,325 metros cuadrados. Esta discrepancia inexplicada de 37 metros no tiende a inspirar mayor confianza en la aserción contenida en la escritura otorgada por Leavitt a favor de Aitkin.

Un cálculo aritmético hecho por el juez de distrito basado en el número de metros especificado en la escritura de Graves

a Colmore y en la suma total del número de metros especificada en las ventas posteriores efectuadas por Colmore, incluyendo la venta de la faja de terreno que ahora se halla en controversia, demuestra que faltan 59 metros cuadrados en adición a los 189 metros y 47 centímetros que Capó trata ahora de recobrar de Romaní. En otras palabras, el déficit de Colmore sobre esta base sería 248 metros 47 centímetros en vez de 189.47 metros. Sin embargo, al hacer este cálculo el juez de distrito asumió que la diferencia existente entre el área especificada en la escritura de Graves a Colmore y el área total de los solares segregados y vendidos por Colmore era un déficit y no un superávit. En realidad no hay prueba satisfactoria en que basar tal conclusión.

La primera de las dos escrituras de Colmore a Capó no hace mención de ningunas segregaciones anteriores. El solar se describe como lindante al norte en parte por una casa perteneciente a la Sra. Catalina Vda. de Cuyar. Fuera de esta circunstancia la escritura lee tal cual si el solar vendido por ella a Capó fuera el primero vendido por Colmore. El registro demuestra otras ventas anteriores, más denota también que la mayoría de las ventas realizadas por Colmore fueron hechas después de haberse efectuado la primera enajenación a Capó. La segunda escritura de Capó dice en términos generales que se habían hecho segregaciones anteriores y trata de demostrar una segregación y venta de la faja que ahora está en controversia. La primera escritura demuestra que Colmore alegaba tener el dominio de la faja de terreno que posteriormente trató de enajenar. No sienta base alguna para tal reclamación. Mucho menos demuestra que la faja reclamada por él jamás hubiese formado parte del terreno comprado a Graves. La segunda escritura no arroja ninguna luz adicional en la cuestión. Ninguna de estas dos escrituras menciona déficit alguno. La inferencia obvia que se puede hacer de ambas es que Colmore retuvo un remanente no vendido de área desconocida.

Colmore declaró como testigo durante el juicio. Asume

en su testimonio, al igual que lo hizo el juez de distrito en su opinión, sin tratar de demostrarlo, la existencia de un déficit. Él declaró que al comprarla de Graves tenía una mensura hecha por Castro. Entonces se le permitió que dijera, sin objeción alguna, que Castro le había dicho que había una porción que la Sra. Boerman le manifestó era suya; y que ella estaba en posesión de la misma sin razón alguna; y que él (Castro) había estudiado "la cerca de ella" y la de él. .Colmore también manifestó que Castro le había mostrado en el mapa la porción ocupada por la Sra. Boerman sin título alguno y era una faja en la parte sur del solar de ella y otro pedazo más pequeño en la parte oeste y que le parecía que ésas eran las porciones que vendió a Capó en la segunda escritura. Este testimonio, al igual que la prueba documental, está muy lejos de establecer la existencia de cualquier déficit. Tal cual sucede con la prueba documental, el mismo no ofrece base alguna para llegar a la conclusión de que la faja en controversia estaba incluída en los terrenos vendidos por Nairn a Leavitt y posteriormente por Graves a Colmore.

La prueba relativa a la existencia de cualquier exceso en poder del demandado es igualmente poco satisfactoria. Del hecho de que un administrador judicial, bajo las circunstancias por él explicadas durante el juicio, firmara unas planillas en que se especificaban 1,614.82 metros en vez de 1,337.05 metros como el área del solar de Boerman no se desprende necesariamente que el solar de Boerman, tal cual fué trazado en el terreno por el mismo Boerman, contiene más de los 1,337.05 metros especificados en las escrituras de Nairn a Boerman. El mero hecho de que Romaní al radicar las planillas de sus propiedades para el siguiente año fiscal describiera el solar como que se componía del número de metros especificado en su escritura y en la de Nairn a Boerman no equivalía a una admisión de que él estuviera en posesión material de cualquier cantidad en exceso de dicha área. La declaración de Colmore deja tanto de establecer un exceso

en el solar de Boerman como de establecer un déficit en la parcela mayor adquirida por Colmore. Esta es la única prueba relativa a cualquier exceso. Fuera de esta débil prueba, el demandante no tenía mayor razón para reclamar un exceso en el solar de Boerman que la que hubiese tenido para solicitar un superávit en cualquiera de los solares segregados y vendidos a personas distintas al demandante por Colmore, como tampoco podía hacerlo en cualquiera de los solares segregados o vendidos por Nairn a personas distintas a Colmore y Boerman, o en la calle Washington, o en la avenida Nairn. De todos modos, de la prueba que obra ante nos no tenemos mayor razón para creer que Boerman al plantar sus palmeras unos veinte años antes de iniciado el presente litigio, tomara hacia el sur terreno de su vendedor, que la que tendríamos para creer que él tomó otros terrenos al este o al oeste o en ambas direcciones, o en la zona marítima al norte, o que el exceso en cuestión pudiera haber sido agregado por accesión debido a un cambio de la costa y a la consiguiente variación de la zona marítima en sí.

Empero no es necesario que basemos nuestra decisión en el hecho de que el demandante dejara de establecer un déficit o un superávit. Aún si el demandante hubiese establecido la existencia de un déficit en el resto del terreno materialmente poseído por Colmore después de numerosas segregaciones cuyos linderos materiales, al igual que los de la porción mayor, eran más o menos inciertos, y hubiese también establecido la existencia de un exceso sobre el área especificada en el título del demandado, esto sin más no le hubiese dado derecho a que se dictara una sentencia a su favor por el total de dicho exceso. El hecho saliente es que el demandante dejó de establecer aun la posesión implícita por parte de Colmore, toda vez que no se demostró que la faja en cuestión hubiese estado incluída implícitamente o en alguna otra forma dentro de los linderos especificados en cualquiera de las escrituras, comenzando con la enajenación hecha por

Nairn a Leavitt y terminando con el traspaso efectuado por Graves a Colmore. Si el mismo Colmore no tenía la posesión implícita de la faja en controversia, él no podía traspasar tal posesión a Capó. Entonces la cuestión relativa a si la corte de distrito cometió error al resolver que la escritura de Colmore a Capó era ineficaz por falta de entrega material de la posesión, es académica y a excepción de la cuestión de costas los otros errores, de haberse cometido, no eran perjudiciales.

. Nada hay en los autos que tenemos a la vista que sirva de base a la conclusión de que la corte de distrito abusara de su discreción al conceder las costas al demandado.

*La sentencia apelada debe ser confirmada.*